## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

               Plaintiff,

v.

Joseph Paul Young,

               Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal Case No. 09-183 ADM/FLN
Civil Case No. 13-3464 ADM

Richard Newberry, Esq., United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Joseph Paul Young, pro se.

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Defendant Joseph Paul Young's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Docket No. 95] (the "2255 Motion"), Young's Motion to Compel Affidavit [Docket No. 101] (the "Motion to Compel"), and Young's Motion for Appointment of Counsel [Docket No. 103] (the "Motion for Counsel").  For the reasons set forth below, Young's motions are denied.

## II.  BACKGROUND

On July 14, 2009, Young was indicted on four counts of bank robbery under 18 U.S.C. § 2113(a).  The robberies occurred in Minnesota on September 18, 2007, September 25, 2007, January 26, 2008, and April 16, 2008.  Indictment [Docket No. 1].  On June 23, 2011, a jury found Young guilty of all four counts.  Verdict [Docket No. 63].  Young had previously pled guilty to a robbery in West Virginia on February 24, 2009, and was found guilty of a series of

three robberies in South Dakota on August 10, 2010.

On October 4, 2011, the Court sentenced Young to 220 months of imprisonment and 3 years of supervised release for the Minnesota bank robberies. See Sentencing J. [Docket No. 78] 2-3. Restitution was ordered in the amount of $15,226. Id. at 5. Young appealed his sentence, and on December 20, 2012, the Eighth Circuit Court of Appeals affirmed. United States v. Young, 701 F.3d 1235 (8th Cir. 2012).

Young now moves the Court under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.

### III.  DISCUSSION

28 U.S.C. § 2255 provides a person in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of his sentence. See United States v. Addonizio, 442 U.S. 178, 185 (1979).  A petitioner may raise a constitutional issue in a § 2255 motion that he did not raise on direct appeal, but he can only do so if he demonstrates: "(1) cause for the default and actual prejudice or (2) actual innocence." United States v. Moss, 252 F.3d 993, 1001 (8th Cir. 2001).[1]  Also, "[a] petitioner simply cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994).

### A.  Pre-Indictment Delay

First, Young argues the Government violated his due process rights by delaying the

---

[1]  In his Motion for Counsel, Young claims he is innocent of all counts of his conviction. Young has not demonstrated, by argument or evidence, how he is actually innocent of these crimes.  As a result, only cause and prejudice are addressed herein.

indictment in the Minnesota case for too long after the start of his "inextricably intertwined"

cases in South Dakota and West Virginia.  2255 Mot. at 5.  Young was indicted in Minnesota

nine months after his indictment for related robberies in South Dakota.  2255 Mot. Attach. 1, at

3.  Additional indictments in West Virginia and Kentucky were issued one month and seven

months after the South Dakota indictment, respectively.  Id.

        This pre-indictment delay challenge raises a constitutional issue that was not raised on

direct appeal, so Young must demonstrate cause for the procedural default and prejudice from

the failure to appeal the issue directly.  Anderson, 25 F.3d at 706.  Young's only attempt to

demonstrate cause for failure to raise this issue is that defense counsel "had control of all direct

appeal issues."  2255 Mot. at 5.  In his reply memorandum and Motion to Compel, Young argues

he asked his counsel to raise the issue on appeal, and that counsel decided not to do so.

        Young has failed to show cause why this issue was not raised on direct appeal.  Although

Young states that he told his counsel to raise the pre-indictment delay issue, his counsel may

have determined that (as the Court finds below) the issue was not viable on appeal.  See Reese v.

Delo, 94 F.3d 1177, 1185 (8th Cir. 1996) ("[C]ounsel has discretion to abandon losing issues on

appeal.").  Young also leaves open the possibility that while he initially asked counsel to raise

the issue, he ultimately agreed to his counsel's appeal strategy.  And, nowhere in his pleadings

does Young attempt to demonstrate, or actually demonstrate, that his counsel provided

ineffective assistance.  Cf. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Absent

unusual circumstances, a showing of ineffective assistance of counsel satisfies both cause and

prejudice.").

        Even if Young had demonstrated cause, he has not demonstrated actual prejudice from

3

the failure to raise the delay issue in his direct appeal.  The Eighth Circuit has held that pre-indictment delay "will be sufficiently 'oppressive' to warrant dismissal of an indictment where the delay was unreasonable and substantially prejudicial to the defendant in the presentation of his case."  United States v. Bartlett, 794 F.2d 1285, 1289-90 (1986) (citation omitted).  The defendant has the burden of proving actual prejudice flowed from the pre-indictment delay by relating the substance of testimony from missing witnesses or the information included in lost documents, and by showing the information was not available through substitute sources.  Id.  In addition, the defendant may not rely on "speculative or conclusory claims alleging 'possible' prejudice."  Id. (citation omitted).

Here, Young summarily argues that the delay impeded his ability to develop evidence, claiming he could have better developed "other means of defense," including witness testimony and cellphone records, had the Government promptly charged him in the Minnesota case.  See 2255 Mot. Attach. 1; Def.'s Reply [Docket No. 104] at 3.  But Young has not indicated what information could have been obtained through witnesses or records that was lost because of the delay, or how this information could have altered the outcome of Young's trial.  As such, Young has not demonstrated actual prejudice.

**B.  Use of Immunized Statements**

For his second challenge, Young argues that during his trial in Minnesota, the Government improperly used immunized statements Young made in connection with his West Virginia plea agreement.  2255 Mot. at 6.  This is a constitutional issue that was not raised on direct appeal, requiring that Young must now demonstrate cause and prejudice.

Young again argues that this issue was not raised on direct appeal because his counsel

controlled Young's appeal strategy.  For the reasons stated above, this attempt to show cause is insufficient.

Even assuming Young had shown cause, he has not shown prejudice.  The Government did not use immunized statements from the West Virginia plea agreement at trial.  See Trial Tr. Vol. II [Docket No. 85] 257-59.  At trial, the Government withdrew its motion to offer the stipulated statement of facts from the plea agreement.  Id.  Instead, the Government elicited the underlying information directly from FBI Agents Marco Rodriguez and David Burlew.  See id. at 262-81; Trial Tr. Vol. III [Docket No. 86] 319.  In his reply, Young appears to argue that the Government should not have been allowed to call the FBI agents as witnesses.  But Young offers no reason why relevant fact witnesses should have been barred from testifying, and even if he had, such a challenge would not be constitutional in nature.  As a result, Young's second § 2255 ground offers no relief.

## C.  Destruction of Evidence

Young next argues the Government destroyed two pieces of evidence.  2255 Mot. at 8. First, Young claims the Government destroyed video from the U.S. Bank robbery on January 26, 2008.  Second, Young claims the Government destroyed a written description of the bank robber by bank teller Erin Sandstede, referred to as a "bandit sheet."

This is a constitutional issue that was not raised on direct appeal, so again Young must demonstrate cause and actual prejudice.  To show cause, Young claims his defense counsel had control of the direct appeal.  This attempt to show cause is again denied for the reasons stated above.

Young has also not demonstrated actual prejudice.  Instead, Young speculates the video

evidence and the bandit sheet must have revealed "something exculpatory," such as a tattoo or other identifying information, which would exonerate him as a suspect.  2255 Mot. Attach. 3, at 2 (giving examples of possible evidence on the tape such as "tattoos, birthmarks, or possibly a missing finger"); Def.'s Reply at 8.  This open speculation offers no indication that actual exculpatory evidence was destroyed before trial.

Even assuming Young had identified exculpatory evidence that was destroyed, he still has not shown actual prejudice.  "Unless a defendant can show bad faith on the part of police, failure to preserve potentially useful evidence does not constitute denial of due process of law."  United States v. Webster, 625 F.3d 439, 446 (8th Cir. 2010) (citing Arizona v. Youngblood, 488 U.S. 51, 58 (1988)).  Even if there is bad faith destruction of evidence, "the evidence must have had apparent exculpatory value and comparable exculpatory evidence must not have been reasonably available to the defendant."  Webster, 625 F.3d at 446 (citing California v. Trombetta, 467 U.S. 479, 488-89 (1984)).

Here, the Government never possessed the U.S. Bank video evidence.  Instead, U.S. Bank provided the Government still photos from the video, which were used at trial.  See, e.g., Trial Tr. Vol. I [Docket No. 84] 54-55.  At trial, FBI agent Lyle Beckman testified that the FBI eventually requested the video from U.S. Bank, but the bank had already destroyed it as part of its routine data purging protocols.  Trial Tr. I at 103.  Thus, the Government never acquired the video and could not have destroyed it in bad faith.  There is also nothing to suggest the video had apparent exculpatory value, and the still photos from the video used at trial offered comparable probative value.

Additionally, there is no indication the Government destroyed the bandit sheet in bad

faith.  At trial, Sandstede testified she provided the bandit sheet to the FBI.  Trial Tr. I at 93.  The

bandit sheet was never produced in discovery, but there is no evidence of its destruction by the

Government or anyone else.  Even if the Government did destroy or lose the bandit sheet in bad

faith, there is nothing to suggest the bandit sheet had apparent exculpatory value.  Comparable

evidence was also available through the testimony of Sandstede, who Young's counsel cross-

examined at trial.  See Trial Tr. I at 90-92.  Again, Young has not shown actual prejudice.

**D.  Unnecessarily Suggestive Pretrial Identification**

Young's fourth ground is a claim of an unnecessarily suggestive pretrial identification

procedure.  2255 Mot. at 9.  FBI Agent Drew Helms used the same photo array for two witnesses

in this case.  On September 18, 2008, Helms displayed the array to Sandstede, the bank teller.

Sandstede placed her initials on the back of the photo she identified as the robber.  That same

day, another bank teller and witness to the bank robbery, Laura Luitjens, reviewed the same

photo array and identified the same photo as the robber.  Young argues Sandstede's initials on

the back of his photo unfairly suggested his identity as the suspect during Luitjens' review of the

photo array.

As a constitutional challenge, Young must again demonstrate cause and actual prejudice

for failing to raise the issue on direct appeal.  Again, Young argues his counsel controlled the

appeal, and again, this attempt to show cause is unsuccessful.

Even assuming Young had shown cause, his challenge would fail.  Due process requires

suppression of a pretrial identification "if, under the totality of the circumstances, the

confrontation procedure was so unnecessarily suggestive and conducive to irreparable mistaken

identification as to be fundamentally unfair to the defendant."  Harris v. Wyrick, 644 F.2d 710,

7

712 (8th Cir. 1981) (quotation omitted).  Courts use a two step analysis to determine whether an

identification is admissible in evidence at trial.  Manson v. Brathwaite, 432 U.S. 98, 107-14

(1977).  First, the court must ask "whether the police used an impermissibly suggestive

procedure in obtaining" the identification.  Id. at 108.  Second, if the procedure was

impermissibly suggestive, the court must assess the reliability of the suggestive identification

because "reliability is the linchpin in determining the admissibility of identification testimony."

Id. at 114.  Factors determining reliability include "the opportunity of the witness to view the

criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior

description of the criminal, the level of certainty demonstrated at the confrontation, and the time

between the crime and the confrontation.  Against these factors is to be weighed the corrupting

effect of the suggestive identification itself."  Id. (citing Neil v. Biggers, 409 U.S 188, 199-200

(1972)).  The Eighth Circuit follows this two-prong analysis and has held that improper

identification procedures can be admissible as long as the identification is still reliable.  Clark v.

Caspari, 274 F.3d 507, 511-12 (8th Cir. 2001).

Young argues Luitjens must have seen Sandstede's initials on the back of his photo

during her review.  At a pretrial hearing, Helms testified Luitjens did not turn over the photos

during the identification procedure, and that even when the officer held them up to a light, he

could not see the initials through the photo.  Tr. Mot. Hr'g [Docket No. 32] 90.  Magistrate

Judge Franklin L. Noel found this testimony credible, and found no other evidence suggesting

Luitjens had seen Sandstede's initials during the lineup.  Report & Recommendation [Docket

No. 38] 14.  The Court adopted the Report and Recommendation upon Young's objection, and

found no merit to his argument.  Order, June 9, 2011 [Docket No. 45].  Again, Young has failed

to show the photo lineup was unnecessarily suggestive.

Even if the lineup was unnecessarily suggestive, the photo identification was sufficiently reliable as to be admissible.  Luitjens saw the bank robber in a well-lit setting for "a few seconds" and gave an accurate description of him, including that he was wearing a ball cap, a flannel shirt, and one gardening glove.  Trial Tr. I at 69-70.  Luitjens gave a description of the robber within a few days after the robbery that was accurate except for the color of his hat.  Id. at 75-77.  Luitjens testified that she was "pretty confident" her identification through the photo lineup a few months after the robbery was accurate.  Id. at 77-78.

Although Luitjens' interaction with the robber was brief and her initial description misidentified the color of his hat, her testimony was not so unreliable as to prohibit admitting it into evidence.  Luitjens was subject to cross-examination, and "evidence with some element of untrustworthiness is customary grist for the jury mill.  Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."  Manson, 432 U.S. at 116.  Young's fourth challenge is denied.

### E.  Improper Use of 404(b) Evidence

Finally, Young argues the Government's use of Rule 404(b) evidence from the South Dakota bank robbery was improper and confusing to the jury.  This is a nonconstitutional issue that was raised on direct appeal and is thus barred from substantive analysis in a § 2255 motion absent a showing of changed circumstances in the law.  Anderson, 25 F.3d at 706.

### F.  Motion for Appointment of Counsel

"[T]he right to appointed counsel extends to the first appeal of right, and no further." Pennsylvania v. Finley, 481 U.S. 551, 555 (1987).  Federal prisoners collaterally challenging

their convictions or sentences do not have a right to counsel.  See id. at 555-56; Pollard v. Delo,

28 F.3d 887, 888 (8th Cir. 1994) (citing McClesky v. Zant, 499 U.S. 467, 495 (1991)).  The

Court has discretion to appoint counsel in a § 2255 proceeding only if "the interests of justice so

require."  18 U.S.C. § 3006A(a)(2)(B).  As discussed above, Young has not indicated any viable

basis for relief under § 2255, and so the interests of justice do not warrant the appointment of

counsel.

## IV.  CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a

substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Tiedeman v.

Benson, 122 F.3d 518, 523 (8th Cir. 1997).  To make such a showing, "[t]he petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The

Court finds it unlikely that another court would decide the issues raised in this § 2255 motion

differently, or that any of the issues raised in Young's petition would be debatable among

reasonable jurists.  Therefore, the Court declines to grant a certificate of appealability.

Also, for the reasons stated above, an evidentiary hearing in this matter is not warranted,

as the record and the parties' arguments definitively show Young is not entitled to relief under

§ 2255.  28 U.S.C. § 2255; Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).  For the

same reasons, Young's Motion to Compel is denied.

## V.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Defendant Joseph Paul Young's Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence [Docket No. 95] is **DENIED**.

2.      Defendant's Motion to Compel Affidavit [Docket No. 101] is **DENIED**.

3.      Defendant's Motion for Appointment of Counsel [Docket No. 104] is **DENIED**.

4.      A certificate of appealability shall not issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

                                                    BY THE COURT:


                                                    _____s/Ann D. Montgomery_____
                                                    ANN D. MONTGOMERY
                                                    U.S. DISTRICT JUDGE

Dated:  April 22, 2014.